# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

In re Authorized Investigative Demand )
to Vitas Healthcare Corporation )
)
)
)
)   Case No. _____
)   **3. - 10MC-133-K**
)
)
)
)
)

## MOTION TO QUASH AUTHORIZED INVESTIGATIVE DEMAND
## AND BRIEF IN SUPPORT THEREOF

Movant, Vitas Healthcare Corporation ("Vitas") respectfully moves this Court for an Order

quashing an Authorized Investigative Demand ("AID") issued to Vitas on September 29, 2010 by the

United States Attorney's Office for the Northern District of Texas pursuant to 18 U.S.C. § 3486.

Vitas seeks such an Order because the AID is unreasonable and overbroad, in that it seeks all

electronic documents over an eight-year period for ten specified individuals without any connection

to the underlying healthcare fraud investigation.  Vitas bases this Motion on the attached brief, the

attached exhibits, and the Proposed Order submitted under separate cover.

Respectfully submitted,

DATED: October 28, 2010

s/ D. Gibson Walton
D. Gibson Walton
Texas Bar Number:  00000082
Hogan Lovells US LLP
700 Louisiana Street, Suite 4300
Houston, TX 77002
Tel: (713) 632-1400
Fax: (713) 632-1401
Gib.Walton@hoganlovells.com

Of counsel:

Peter S. Spivack *pro hac vice application in process*
Hogan Lovells US LLP
555 13th Street NW
Washington, DC 20004
Tel: (202) 637-5631
Fax: (202) 637-5910
Peter.Spivack@hoganlovells.com

**BRIEF IN SUPPORT OF MOTION TO QUASH AUTHORIZED INVESTIGATIVE DEMAND**

I.          **INTRODUCTION**

Vitas Healthcare Corporation ("Vitas") is a national hospice company headquartered in Miami, Florida.[1]  Vitas' hospice programs provide palliative end-of-life care for adult and pediatric patients with a wide range of life-limiting illnesses, including cancer, stroke, heart disease, lung disease, liver disease, kidney disease, multiple sclerosis, ALS, Alzheimer's and AIDS.  Hospice care is eligible for coverage under the Medicare Hospice Benefit and, in certain instances, under Medicaid.  Vitas operates forty-five hospice programs in fifteen states, including Texas.

Vitas understands that the United States Department of Justice and the Attorney General for the State of Texas are conducting a joint investigation into allegations that Vitas filed, or caused to be filed, false claims for hospice benefits to Medicare and Medicaid, pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*  Vitas received an Authorized Investigative Demand ("AID"), issued pursuant to 18 U.S.C. § 3486, from the United States Attorney's Office for the Northern District of Texas, on September 29, 2010.  The AID seeks the production of "[a]ll electronic documents, including mailboxes, however and wherever maintained or categorized," for ten specified individuals "from January 1, 2003, through the present."  Exh. A.  These ten individuals include very senior employees at Vitas, including its Chief Medical Officer, National Medical Director, Chief Operating Officer, and Vice President for Market Development and Sales.  Vitas has preliminarily estimated that their electronic documents could exceed 35,000 emails per year for each individual, or over three million emails.  Because many of the emails will have multiple attachments, the total page count will likely be many times that number.  The AID does not seek to connect its demand for documents to the underlying investigation.  Indeed, the demand contains no subject matter limitation whatsoever.

---

[1]       Vitas, a pioneer and leader in the American hospice movement, is a subsidiary of Chemed Corporation, a publicly traded company.

Vitas respectfully moves the Court for an Order quashing the AID. The AID fails the reasonableness test under the Fourth Amendment because it is not sufficiently limited in scope to reasonably relate to and further its purpose, i.e., the underlying healthcare fraud investigation of Vitas. Vitas has sought to narrow the scope of the AID by conferring with the government's representatives, but the government has declined to narrow the AID.[2] As a result, Vitas seeks relief from the Court and moves to quash the AID.

II.         **BACKGROUND**

The AID is the fourth such administrative subpoena that Vitas has received since 2005 in investigations being coordinated by the Civil Fraud Section of the United States Department of Justice ("USDOJ"). The first two were issued in connection with a qui tam complaint filed in the Southern District of Florida in June 2004 regarding three of Vitas's Florida programs. Broadly stated, the complaint alleged Vitas knowingly falsely recertified patients as eligible for hospice benefits, when those patients were ineligible because they did not have a prognosis of six months or less to live. At USDOJ's request, Vitas extended the statute of limitations period on numerous occasions. Vitas moved to dismiss on grounds of failure to state a claim, and the complaint was dismissed with prejudice, following the government's decision not to intervene "at this time," by the United States District Court for the Southern District of Florida on July 25, 2007, after three years of investigation by the government and literally hundreds of thousands of pages of patient files and other documents produced by Vitas. The Court of Appeals for the Eleventh Circuit affirmed the dismissal on all bases on November 3, 2008 and issued the mandate on December 8, 2008. *United States ex rel. Barys, et al v. Vitas Healthcare, et al*, Case No. 1:04-21431 (11th Cir. Dec. 8, 2008).

On May 7, 2009, Vitas received a third AID, this time seeking documents relating to its four Texas programs. Vitas has not seen a copy of the qui tam complaint regarding its Texas programs, and in fact does not know whether one has been filed and remains under seal. Vitas also received a

---

2         USDOJ has agreed to the exclusion of personal and privileged emails.

Civil Investigative Demands ("CID") from the Attorney General for the State of Texas, which it assumes is conducting a parallel investigation in coordination with USDOJ. Vitas has already produced over three hundred and fifty thousand pages of documents to USDOJ and the State of Texas in response to the AID and the CID (aside from an additional approximately 170 boxes – or approximately 400,000 pages produced in response to the AIDs relating to its Florida programs), and it expects to continue to produce a significant volume of documents. *See* Exh. B.

Because of the time, expense, and volume associated with producing electronically stored documents sought by the AID and the CID, Vitas sought to negotiate a set of search terms with USDOJ and the State of Texas.[3] Exhs. B and C. Such terms would be applied as a first level "screen," and the resulting data would be reviewed for privilege and responsiveness. Exh. B. Vitas's proposal will entail significant expense; indeed, the electronic vendor's proposal to Vitas estimates a cost for data processing alone (without attorney review time) that could exceed over one million dollars. With the exceptions discussed below, USDOJ accepted this search term concept, and the parties engaged in extensive discussion regarding the specific terms to be used. Exh. B.

USDOJ informed Vitas that, for ten specific individuals, it was seeking all of their electronically stored documents and would not agree to let Vitas use key words as an initial screen. Exh. B. At the same time, Vitas received a second CID from the State of Texas in which the State expressly *permitted* Vitas to use key words as an initial screen on the ten individuals' electronic documents. Exh. D. On September 29, 2010, USDOJ served a second AID on Vitas, seeking the production of "[a]ll electronic documents, including mailboxes, however and wherever maintained or categorized," for the ten specified individuals "from January 1, 2003, through the present." Exh. A.

On October 7, 2010, Vitas sent a written response to USDOJ, in which it objected to the wholesale production of all electronic documents associated with the ten individuals on Fourth

---

[3]     Vitas informed USDOJ that there were approximately 453 current and former employees of the four Texas programs within certain categories specified by USDOJ whose mailboxes would need to be searched for responsive documents, including the 10 individuals whose entire mailboxes were later sought.

Amendment grounds, and reiterated its proposal to use key words as an initial screen. Exh. D. On

October 14, 2010, Vitas notified USDOJ that, unless it modified its requests, Vitas intended to file a

motion to quash the second AID. Pursuant to the Local Rules, Vitas and USDOJ conferred on that

same day, and USDOJ informed Vitas that it intended to oppose the motion to quash. Vitas now

moves to quash the AID issued on September 29, 2010.

III.        **ARGUMENT**

A.        **The AID Is Not Sufficiently Limited in Scope to Meet Fourth Amendment "Reasonableness."**

The AID is issued under the authority of 18 U.S.C. § 3486, which was added to Title 18 by

the Health Insurance Portability and Accountability Act of 1996; such AIDs are often referred to as

"HIPAA subpoenas." HIPAA subpoenas must meet the Fourth Amendment's reasonableness test

for investigative subpoenas. As the Fourth Circuit has articulated the test for HIPAA subpoenas,

> [A]n investigative subpoena, to be reasonable under the Fourth Amendment, must be (1) authorized for a legitimate governmental purpose; (2) limited in scope to reasonably relate to and further its purpose; (3) sufficiently specific so that a lack of specificity does not render compliance unreasonably burdensome; and (4) not overly broad for the purposes of the inquiry as to be oppressive, a requirement that may support a motion to quash a subpoena only if the movant has first sought reasonable conditions from the government to ameliorate the subpoena's breadth.

*In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000) (affirming district court's grant of a

motion to quash a HIPAA subpoena for a physician's personal financial records and its denial of the

motion as to patient records); *see also In re Admin. Subpoena*, 253 F.3d 256, 265 (6th Cir. 2001)

(applying Fourth Amendment reasonableness test to HIPAA subpoena).

The material sought must be relevant to the purpose of the inquiry, which is "a question of

whether the documents requested pursuant to the subpoena are relevant to the health care fraud

investigation being undertaken." *In re Admin. Subpoena*, 253 F.3d at 266. The Sixth Circuit stated,

"while relevance should be viewed broadly, because the court was given the duty of reviewing the

agency's decision to issue a subpoena, it [does] not simply have to accept the agency's opinion as to

what is and is not relevant to agency investigations." *Id.* at 267.

Unlike the administrative subpoenas in the Fourth and Sixth Circuit cases (or even the earlier AID served by USDOJ on Vitas), the September 29, 2010 AID provides no listing of categories of documents.  In fact, the AID seeks *all* electronic documents for the ten specified employees in the past eight years, regardless of any relationship to the underlying investigation.  The AID thus sweeps in any document in electronic form for these ten individuals, whether or not that document relates to the allegation that has been central to the government's investigation to date:  whether Vitas knowingly admitted and recertified hospice patients with a prognosis of greater than six months.  In Fourth Amendment terms, the AID is akin to seizing every single piece of paper in these individuals' offices, briefcases, and elsewhere, regardless of its subject matter.  *See United States v. Cook*, 657 F.2d 730, 734 (5th Cir. 1981) ("Failure to employ the specificity available will invalidate a general description in a warrant.").  Such a sweeping exercise of authority would not withstand judicial scrutiny, and therefore, the AID does not meet the Fourth Amendment's reasonableness test.

### B.      The AID Is Overbroad.

The AID also fails the requirement that it not be "overly broad for the purposes of the inquiry as to be oppressive."  *In re Subpoena Duces Tecum*, 228 F.3d at 349.  Although the AID is directed at the electronic documents of ten specific individuals, six of these individuals have worked at Vitas for the entire time period covered by the AID and are in very senior executive positions.  As a result, the volume of electronically stored documents is considerable, and their emails alone (not including attachments) could exceed several million in number.  Exh. B.

As the correspondence reflects, Vitas sought to negotiate the use of search terms with USDOJ.  Exhs. B and D.  Although USDOJ agreed to the use of search terms with over four hundred other employees, it rejected the use of search terms with these ten specific employees.  Exhs. A, B, and D.  Instead, it offered to allow Vitas to review and exclude emails that are personal in nature or subject to the attorney-client privilege.  This would entail a massive and inordinately expensive undertaking.

USDOJ's suggestion will not reduce the burden that the AID imposes on Vitas. Vitas still must review each of the emails to determine whether it is privileged and/or personal in nature, which will take a significant amount of time and result in considerable expense to Vitas, involving hundreds of hours of attorney review time. The use of search terms will not eliminate the burden on Vitas; Vitas will still have to review the results of the application of the search terms for responsiveness and privilege. The use of search terms, however, is a recognized and accepted method by which initially to screen documents.

## IV.        CONCLUSION

The AID exceeds both the acceptable scope and burdensomeness that is permissible under the Fourth Amendment. For the reasons set forth herein, Vitas respectfully moves the Court to quash the September 29, 2010 AID and for any other further relief to which it may be justly entitled.

### Certificate of Conference

Pursuant to Local Rule 7.1, on October 14, 2010, Peter S. Spivack, attorney for Vitas, conferred with Sean McKenna, Assistant United States Attorney, who indicated the United States Attorney's Office for the Northern District of Texas opposes the relief sought herein.

**Certificate of Service**

On October 28, 2010 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas.  I hereby certify that I have served the following by hand delivery:

Sean R. McKenna, Esq.
Assistant U.S. Attorney
United States Attorney's Office for the
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242

Katherine Miller, Esq.
Assistant U.S. Attorney
United States Attorney's Office for the
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242

Served via Fed Ex:

Jill Callahan, Esq.
Commercial Litigation Branch
United States Department of Justice
Patrick Henry Building, Room 9928
601 D Street
Washington, D.C.  20004

s/ D. Gibson Walton
D. Gibson Walton

# EXHIBIT A



**U.S. Department of Justice**

**United States Attorney**
**Northern District of Texas**

*1100 Commerce St., 3rd Fl.*     *Telephone (214)659-8600*
*Dallas, Texas 75242-1699*      *Fax (214) 767-4104*

September 29, 2010

VITAS HEALTHCARE CORPORATION
c/o Peter S. Spivack, Esquire
Hogan Lovells
555 Thirteenth Street, NW
Washington, DC 20004

RE: Federal Administrative Subpoena

Dear Mr. Spivack:

You are being served with an Administrative Subpoena regarding the production of certain records. In lieu of your appearance on **October 15, 2010**, you may comply with this subpoena by delivering the designated records, **prior to the appearance date**, to S/A James Seifert, Health and Human Services, Office of Inspector General, 5835 Callaghan Road, Room 509, San Antonio, Texas 78228.

Please produce all requested documents in an electronic format. As you know, it will be necessary for your organization to maintain the originals. **Please note failure to produce or destruction of documents responsive to this subpoena may constitute a violation of federal law, including 18 U.S.C. § 1518.**

If you have any questions or need further information, please contact S/A James Seifert, at 210.543.1045.

Sincerely,

JAMES T. JACKS
UNITED STATES ATTORNEY

KATHERINE MILLER
Assistant United States Attorney

Enclosures

# UNITED STATES OF AMERICA
## DEPARTMENT OF JUSTICE

### SUBPOENA DUCES TECUM

TO:   VITAS HEALTHCARE CORPORATION
c/o Peter S. Spivack, Esq.
Hogan Lovells
555 Thirteenth Street, NW
Washington, DC 20004

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE Katherine A. Miller, Assistant United States Attorney, an official of the U.S. Department of Justice, and you are hereby required to bring with you and produce the following:*

#### See Attachment

*which are necessary in the performance of the responsibility of the U.S. Department of Justice to investigate Federal health care offenses, defined in 18 U.S.C. § 24(a) to mean violations of, or conspiracies to violate: 18 U.S.C. §§ 669, 1035, 1347, or 1518; and 18 U.S.C. §§ 287, 371, 664, 666, 1001, 1027, 1341, 1343, or 1954 if the violation or conspiracy relates to a health care benefit program (defined in 18 U.S.C. § 24(b)).*

**PLACE AND TIME FOR APPEARANCE:**
At United States Attorney's Office, 1100 Commerce Street, Third Floor, Dallas, Texas 75242-1699 on or before the 15th day of October 2010, at 3:00 o'clock P.M.

Failure to comply with the requirements of this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of 18 U.S.C. § 3486.

*IN TESTIMONY WHEREOF*

*JAMES T. JACKS*
*UNITED STATES ATTORNEY*
*the undersigned official of the U.S. DEPARTMENT OF JUSTICE, has hereunto set his/her hand this 29th day of September, 2010.*

CHAD E. MEACHAM
CRIMINAL CHIEF

FORM CRM-180
JULY 2001

UNITED STATES OF AMERICA
DEPARTMENT OF JUSTICE

SUBPOENA DUCES TECUM

*Upon contumacy or refusal to obey, this subpoena
shall be enforceable by order of the appropriate
United States District Court.*

RETURN OF SERVICE

I, being a person over 18 years of age, hereby certify
that a copy of this subpoena was duly served on the
person named herein by means of —

1. personal delivery to an individual, to wit:

_____
*(Name)*

_____
*(Title)*

_____
*(Address)*

( ) a.m.
at _____ ( ) p.m. on _____

_____
*(Signature)*

_____
*(Title)*

## Attachment A

The term "document" as used throughout this request means writings or records of every kind or character, conveying information by mechanical, electronic, photographic, or other means, whether encarded, taped, stored or coded electrostatically, electromagnetically, or otherwise. "Document(s)" includes, but is not limited to: reports, records, correspondence, letters, envelopes, messages, notes, memoranda, calendars, diaries, minutes of meetings, working papers, directives, manuals, instructions, guidelines, analyses, agreements, accounts, summaries of investigations, contracts, charts, graphs, drawings, diagrams, press releases, trade letters, comparisons, books, notices, articles, magazines, newspapers, bulletins, internal and external newsletters, brochures, surveys, questionnaires, electronic mail, voicemail messages, facsimiles, telegrams, videotapes, audiotapes, photographs, films, magnetic tapes, computer discs (including floppy discs, hard discs, and hard drives), data cells, all programming instructions, record layouts, and other material necessary for the retrieval of all electronic or word processing material and printouts of data or information stored or maintained by electronic means, microfiche, microfilm, and telephone directories. "Document(s)" also includes preliminary drafts or revisions, any attachments or enclosures, as well as copies or duplicates that are not identical to the original because of additions, deletions, alterations or notations.

We request that Vitas Healthcare Corporation, defined to include all predecessors, successors, parent organizations, subsidiary(ies), affiliate(s), segment(s), region(s), division(s), group(s), related companies, foundations, joint ventures and partnerships, and on behalf of current or former officers, employees, board members, principals, partners, agents, representatives, contractors or any other persons, produce the following documents. This request refers to the time period from January 1, 2003, through the present, and calls for the production of original documents dated at any time during that time period.

1.      All electronic documents, including mailboxes, however and wherever maintained or categorized, for the following persons:

    a.    Keith Becker;
    b.    Justo Cisneros;
    c.    Peggy Pettit;
    d.    Ian Viente;
    e.    Sally Schwenk;
    f.    Dr. Joel Policzer;
    g.    Dr. Barry Kinzbrunner;

h.   Dr. James Wright;
i.   Adrianna Trevino; and
j.   Donald Gaddy.

# EXHIBIT B



Hogan
Lovells

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T +1 202 637 5600
F +1 202 637 5910
www.hoganlovells.com

August 26, 2010

*BY ELECTRONIC AND FIRST-CLASS MAIL*

Sean R. McKenna, Esq.
Assistant U.S. Attorney
United States Attorney's Office for the
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242

Jill Callahan, Esq.
Commercial Litigation Branch
United States Department of Justice
Patrick Henry Building, Room 9928
601 D Street
Washington, D.C. 20004

Re: April 29, 2009 Authorized Investigative Demand to Vitas Healthcare Corporation

Dear Sean and Jill:

I am responding to your emails dated August 9, 2010 and August 19, 2010 on behalf of our client, Vitas Healthcare Corporation ("Vitas"), with regard to the above-captioned Authorized Investigative Demand ("AID"). Vitas is and has been committed to cooperating with your investigation. Because of the issues raised in your emails, I believe that it is helpful to review the production history of this investigation and then discuss and renew our recent efforts to arrive at a mutually agreeable set of search terms to apply against the electronic data set maintained by Vitas.

Vitas received the AID on May 7, 2009, which requested a variety of categories of documents. . We reached out to you to schedule a discussion about the AID shortly thereafter, and we held a call with you on June 3, 2009 during which we discussed your priorities and agreed upon limitations on the AID. On August 14, 2009, we produced two boxes of documents responsive to the AID paragraphs that you identified as priorities. On August 18, 2009, you requested patient files for 59 identified patients. On October 29, 2009, we produced three boxes of patient files, totaling approximately 13,797 pages. On December 28, 2009, we produced twenty-six boxes of patient files, totaling approximately 158,255 pages. 1/ On February 12, 2010, we produced an additional five boxes of documents responsive to the AID paragraphs that you identified as priorities. Our February 12, 2010 production letter stated as follows:

> In addition to the documents produced herewith, Vitas previously has produced documents responsive to the Subpoena on August 14, October 29, and December 28, 2009. As reflected in our previous correspondence, Vitas believes that it has produced the documents responsive to the priority paragraphs, as narrowed by our discussions, and does not anticipate making additional productions to either priority or non-priority paragraphs.

We did not hear from you after sending this letter. The production of documents exclusive of patient files totals approximately 16,123 pages. The total production has been approximately 188,175

---

1/      With regard to the patient files, because some documents were double-sided, we bates labeled both sides of the documents for tracking purposes even if they had no writing on them.

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. Hogan Lovells refers to the international legal practice comprising Hogan Lovells US LLP, Hogan Lovells International LLP, Hogan Lovells Worldwide Group (a Swiss Verein), and their affiliated businesses with offices in: Abu Dhabi Alicante Amsterdam Baltimore Beijing Berlin Boulder Brussels Caracas Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston London Los Angeles Madrid Miami Milan Moscow Munich New York Northern Virginia Paris Philadelphia Prague Rome San Francisco Shanghai Silicon Valley Singapore Tokyo Ulaanbaatar Warsaw Washington DC Associated offices: Budapest Jeddah Riyadh Zagreb

\\DC - 056047/000115 - 3132485 v1

Hogan
Lovells

Sean McKenna, Esq.
Jill Callahan, Esq.
August 26, 2010
Page 2 of 4

pages, and includes complete files for all of the 59 identified patients. In addition to these hard copy documents, Vitas also produced a significant quantity of electronic data, including voluminous spreadsheets. Copies of the production letters are attached to this letter as, respectively, Attachments 1, 2, and 3.

On February 3, 2010, we received a Civil Investigative Demand from the State of Texas ("Texas CID") that contained requests for documents that were broader than those in the AID, as well as files for 117 identified patients, only six of which overlapped with the 59 patient files produced in response to the AID. We contacted the assigned Assistant Attorney General for the State of Texas and learned that his investigation was proceeding in conjunction with yours. We subsequently produced 30 boxes of files for patients identified in the Texas CID, totaling 173,457 pages, as follows: On May 14, 2010, we produced five boxes of patient files. On May 21, 2010, we produced eleven boxes of patient files. On June 9, 2010, we produced fourteen boxes of patient files. As with the AID, patient files were produced for all patients identified in the Texas CID. In addition, as you will recall, we voluntarily produced to Texas additional copies of the patient files and other documents previously produced in response to the AID.

On April 22, 2010, we had a discussion with you and David Ellenbogen of the State of Texas regarding the AID and the Texas CID. We explained that we hoped to reduce the burden on our client by harmonizing the AID and the Texas CID. You and Mr. Ellenbogen stated that you would coordinate and send us a common list of search terms to be used for purposes of the production of electronic documents in response to the AID and the Texas CID. Ms. Callahan said that she would send us the list by April 23, 2010. We received the proposed search term list on May 7, 2010. You also identified ten individuals for whom you wished to have "the entire in-box and archive." *See* Attachment 4.

After reviewing the proposed search term list and the proposed categories of employees to be searched, we informed you on June 4, 2010 that using the job categories that you and Mr. Ellenbogen provided to us, Vitas had determined that there are approximately 453 people in the San Antonio program who fit those job descriptions during the relevant time period and that the data set was so large that Vitas did not have the internal resources to run a test of some of the more common terms to see how many responsive "hits" those terms generated. In other words, Vitas could not begin to illustrate how overbroad and burdensome those requests were. On June 29, 2010, we provided a proposed revised search term list that we felt was sufficiently narrowed to produce relevant data while at the same time reducing the burden of search and review on Vitas. *See* Attachment 5.

On July 15, 2010, you responded to the proposed search term list with a broader set of terms, and stated that we should produce responsive records by August 27, 2010. You also stated that Vitas should now produce the "entire mailbox and archive" for the ten individuals by August 10, 2010. *See* Attachment 6. On August 3, 2010, we responded to your proposed search terms and identified specific terms and connectors that we felt should be narrowed given the large number of custodians that fell within your proposed job categories. We also pointed out that the "entire mailbox and archive" for the ten individuals exceeded the scope of the AID. *See* Attachment 7. We did not receive a response to our August 3, 2010 proposal.

**Hogan
Lovells**

Sean McKenna, Esq.
Jill Callahan, Esq.
August 26, 2010
Page 3 of 4

After we responded in the negative to your request to confirm that we would be producing the
mailboxes and archive for the ten individuals by August 10, 2010, Mr. McKenna stated that "[s]hould
your client fail to produce to the United States all of the requested information by August 31, or make
otherwise acceptable arrangements, we will recommend that the HIPAA/AID subpoena be enforced.
Because this matter is an ongoing parallel civil and criminal investigation by the United States, other
remedies are available to seek the production of the requested information." *See* Attachment 8.
Please note that our client believes that such an approach is unwarranted, especially in view of
Vitas's continued cooperation and its multiple attempts to reach an agreement on a workable set of
search terms. To characterize these efforts as "dilatory" is contrary to the efficient administration of
justice.

On August 13, 2010, we responded that "We have been trying to fashion a key word search that will
be productive for your purposes, while also imposing a reasonable burden on Vitas. We will
continue with that goal in mind." On August 19, 2010, Ms. Callahan repeated Mr. McKenna's points,
stating:

> Please keep in mind that we expect a production, including the mailboxes and
> archives of the individuals identified in earlier messages, by August 31. We have
> already significantly narrowed our request and we do not have time to allow Vitas to
> delay further by claiming that a reasonable request is overly burdensome. We have
> used similar search terms in other investigations and the involved entities were able
> to produce relevant documents in a timely manner.
>
> While we intend to keep all remedies and/or means to obtain production of the
> documents open, we hope that Vitas has reconsidered its earlier position and is now
> willing to cooperate with our investigation.

*See* Attachment 9.

We disagree with your assessment of Vitas's cooperation. Vitas has been cooperating extensively
in this investigation, and reaffirms its commitment to do so. We have produced sixty-six boxes of
documents in this investigation, including hard copy and electronic documents. At your request,
Vitas has repeatedly agreed to waive the statute of limitations for claims under the federal False
Claims Act and related causes of action. We have sought to negotiate the search terms to ensure
that you receive documents relevant to the investigation, while reducing the time, expense, and
burden on Vitas. We are continuing that effort with this letter and are including another proposal for
search terms with this letter. *See* Attachment 10.

Vitas's preliminary extrapolation of the ten individuals' "entire mailbox and archive" yields
approximately 35,000 emails per year for each individual, or approximately 3,150,000 emails for the
time period requested. Because many of the emails will have multiple attachments, the total page
count will likely be many times that number. The enormous time and expense associated with
restoring, reviewing, and reproducing electronic data necessitate our securing your agreement to the
search terms before we embark on this process and will certainly extend any response beyond
August 31; we look forward to discussing and resolving the appropriate search terms further with
you.

**Hogan
Lovells**

Sean McKenna, Esq.
Jill Callahan, Esq.
August 26, 2010
Page 4 of 4

Thank you for your attention to this matter. If you have any questions regarding this matter, or need additional information, please do not hesitate to call me at (202) 637-5631.

Sincerely yours,

Peter S. Spivack

Partner
peter.spivack@hoganlovells.com
D (202) 637-5631

Enclosures

Ccs (w/o enclosures):

     Naomi Dallob, Esq.
     Mark Sterling, Esq.

# EXHIBIT C

August 25, 2010

**Proposed Search Terms – Vitas**
**for USDOJ and Texas Attorney General CIDs**

For searches of mailboxes of job categories identified by USDOJ and ten specific individuals identified by USDOJ.

| Term | Connector |
|---|---|
| Continuous care or CC or CHC or critical care or crisis care or heightened w/5 care or high! w/5 care | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Discharg! | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Focused medical review or FMR | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Long stay | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Not taken under care or NTUC | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Patient | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Palmetto | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Cert! or recert! | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Aggressive or revo! | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Aggres! | w/10 therapy |
| Goal* | w/45 exceed! or eclips! or stretch or admit |
| Milestone* | w/45 exceed! or eclips! or stretch or admit |
| ADC or Average Daily Census or census | w/45 increas! or grow or expand or manipul! |
| Days of care or DOC | w/45 increas! or grow or expand or manipul! |

August 25, 2010

| Term | Connector |
|---|---|
| Length of stay or ALOS or LOS or NCLOS | w/45 increas! or grow or expand or manipul! |
| Physician | w/45 (referral or productivity or admi!) and w/45 increas! or grow or expand or manipul! |
| Refer! | w/45 inapprop! or not approp! or ineligib! or not eligibl! |
| Admit! or admiss! | w/45 faster or quicker or barrier |
| | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Conversion rate | w/45 increas! or grow or expand or manipul! |
| compensation or financial or cash or bonus or reward or payment or quarter! or goal! or attain! or target or sale* or incentive* | w/45 exceed! or eclips! or stretch or admit |
| Leadership council | |
| Extended prognosis or termin! or extend! | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Length of stay | w/15 300 or 500 or 180 or 210 |
| Backdat! | |
| Cap | w/15 offset or adjust |
| Close call | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Trial w/4 period | |
| Policy or procedure | w/45 certification or re-certification or recert! or admission or discharge or billing or revo! |
| Compliance | w/15 scrutiny |
| Signed up | w/45 fast! or quicker or barrier |
| VITAS near care and (not Vitas Healthcare) | w/45 inapprop! or not approp! or improp! or wrong or incorrect or mistake! |
| | w/45 ineligib! or not eligibl! or not qualif! |
| Sales or market! | w/45 increas! or grow or expand or manipul! |

# EXHIBIT D



Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T  +1 202 637 5600
F  +1 202 637 5910
www.hoganlovells.com

October 7, 2010

*BY ELECTRONIC AND FIRST-CLASS MAIL*

Katherine Miller, Esq.
Sean R. McKenna, Esq.
Assistant U.S. Attorney
United States Attorney's Office for the
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242

Jill Callahan, Esq.
Commercial Litigation Branch
United States Department of Justice
Patrick Henry Building, Room 9928
601 D Street
Washington, D.C.  20004

Re:  September 29, 2010 Authorized Investigative Demand to Vitas Healthcare Corporation

Dear Katherine, Sean, and Jill:

I have received the above-captioned Authorized Investigative Demand ("AID") on behalf of my client, Vitas Healthcare Corporation.  The AID requests "[a]ll electronic documents, including mailboxes, however and wherever maintained or categorized," for ten current and former Vitas employees, from January 1, 2003 to the date of the AID.  The AID is issued under the authority of 18 U.S.C. § 3486, which was added to Title 18 by the Health Insurance Portability and Accountability Act of 1996, and such AIDs are often referred to as "HIPAA subpoenas."

HIPAA subpoenas must meet the Fourth Amendment's reasonableness test.  As the Fourth Circuit has articulated the test for HIPAA subpoenas,

> In short, an investigative subpoena, to be reasonable under the Fourth Amendment, must be (1) authorized for a legitimate governmental purpose; (2) limited in scope to reasonably relate to and further its purpose; (3) sufficiently specific so that a lack of specificity does not render compliance unreasonably burdensome; and (4) not overly broad for the purposes of the inquiry as to be oppressive, a requirement that may support a motion to quash a subpoena only if the movant has first sought reasonable conditions from the government to ameliorate the subpoena's breadth.

*In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000) (affirming district court's grant of a motion to quash a HIPAA subpoena for a physician's personal financial records and its denial of the motion as to patient records); *see also In re Administrative Subpoena*, 253 F.3d 256, 265 (6th Cir. 2001) (applying Fourth Amendment reasonableness test to HIPAA subpoena).

I write to raise our concerns that the AID is insufficiently limited in scope to reasonably relate to and further its purpose, and overly broad for the purposes of the inquiry as to be oppressive.  As one court of appeals has phrased the test, the material sought must be relevant to the purpose of the inquiry, which is "a question of whether the documents requested pursuant to the subpoena are relevant to the health care fraud investigation being undertaken." *In re Administrative Subpoena*, 253 F.3d at 266.  The AID is both overbroad and not reasonably related to its purpose because it seeks *all* electronic documents for the ten specified employees in the past eight years, regardless of

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia.  Hogan Lovells refers to the international legal practice comprising Hogan Lovells US LLP, Hogan Lovells International LLP, Hogan Lovells Worldwide Group (a Swiss Verein), and their affiliated businesses with offices in: Abu Dhabi  Alicante  Amsterdam  Baltimore  Beijing  Berlin  Boulder  Brussels  Caracas  Colorado Springs  Denver  Dubai  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  London  Los Angeles  Madrid  Miami  Milan  Moscow  Munich  New York  Northern Virginia  Paris  Philadelphia  Prague  Rome  San Francisco  Shanghai  Silicon Valley  Singapore  Tokyo  Ulaanbaatar  Warsaw  Washington DC  Associated offices: Budapest  Jeddah  Riyadh  Zagreb
\\DC - 066047/000116 - 3152605 v1



Katherine Miller, Esq.
Sean McKenna, Esq.
Jill Callahan, Esq.
October 7, 2010
Page 2 of 2

any relationship to your investigation. Indeed, the AID sweeps in any document in electronic form for these ten individuals, whether or not that document relates to the allegation that Vitas knowingly admitted and recertified hospice patients with a prognosis of greater than six months. In Fourth Amendment terms, the AID is akin to seizing every document in these individuals' offices, regardless of its subject matter. The AID thus does not meet the Fourth Amendment's reasonableness test.

With regard to the April 29, 2009 AID that you previously served on Vitas, we had proposed a key word search as an initial screen for approximately 454 current and former employees of Vitas, including these ten individuals' email. (*See* August 29, 2010 letter from Peter Spivack to Sean McKenna and Jill Callahan.) Although you accepted this proposal for all other Vitas employees, you declined this proposal for these ten specified individuals.

The State of Texas, which we understand is conducting a joint investigation of Vitas' Texas programs with you, served a Civil Investigative Demand on Vitas on September 24, 2010 that also seeks these same ten individuals' email boxes, but provides an alternative to the production of the entire email boxes in the form of a list of key words and connectors to be run against their email boxes. Although we are not entirely in agreement with the list of key words and connectors, we do not understand why this approach is adequate for the purposes of the State of Texas, but not for yours. As a result, we are renewing our proposal to use a set of key words and connectors as an initial screen for relevance for these ten individuals' mailboxes. We look forward to your response.

Thank you for your attention to this matter. If you have any questions regarding this matter, or need additional information, please do not hesitate to call me at (202) 637-5631.

Sincerely yours,

Peter S. Spivack

Partner
peter.spivack@hoganlovells.com
D (202) 637-5631

Ccs:

Naomi Dallob, Esq.
Mark Sterling, Esq.